**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR-25-25-GF-BMM |
| Plaintiff, | |
| vs. | **ORDER ON MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL** |
| NATHAN ST. GODDARD, | |
| Defendant. | |

**INTRODUCTION**

Defendant Nathan St. Goddard moved the Court for a judgment of acquittal as to Count 4 of the Indictment, pursuant to Fed. R. Crim. P. 29(c), or in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33. (Doc. 93.) St. Goddard argues that the evidence presented at trial proved insufficient to support a conviction on Count 4. (*Id*. at 1.) The Government opposes the motion (Doc. 105.) The Court held a hearing on the motion on February 26, 2026. (Doc. 107.) The Court now denies St. Goddard's motion.

**BACKGROUND**

A jury convicted St. Goddard of having made a false statement in violation of 18 U.S.C. § 1001(a)(2) on December 18, 2025. (Doc. 86.) Count 4 of the indictment indictment charged St. Goddard with making a false statement to an

1

FBI agent during an interview conducted on about September 10, 2024, regarding an alleged sexual assault that had occurred in June of 2024. (Doc. 1 at 3.) The Indictment alleges that St. Goddard falsely reported to the FBI agent "that he only picked up Jane Doe, and dropped her off at the lodge, in the early morning hours of June 22, 2024 . . . when he knew he had sexual contact with Jane Doe." (*Id*. at 4.)

The Government played the recorded interview between the FBI special agent Brandon Prete ("SA Prete") and St. Goddard to the jury at trial. The Court admitted the written transcript of the recorded interview into evidence. (*See* Doc. 80 at 3, Exhibit 39.)  SA Prete also testified at trial regarding the interview.

In relevant part, SA Prete asked St. Goddard the following question during the interview conducted on September 10, 2024:

> SA Prete: I understand. Okay. All right. So, you just picked her up, dropped her off at the lodge, and that was kind of the end of it?
>
> St. Goddard: Yeah.

(Doc. 75-1 at 4:12-15.) SA Prete concluded the interview by asking St. Goddard open-ended questions about St. Goddard's involvement with Jane Doe on June 22, 2024, including the following question:

> SA Prete: Well, is there anything else you can tell me, or anything else I should know about?
>
> St. Goddard: No.

(*Id*. at 7:10-12.)

The Court instructed the jury that the Government needed to prove beyond a reasonable doubt the following elements to support a conviction of making a false statement:

1.  St. Goddard made a false statement or representation;

2.  The statement was made in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), specifically in a manner related to a sexual offense under Chapter 109A of the United States Code;

3.  St. Goddard acted willfully and knowingly, that is, St. Goddard acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and

4.  The statement was material; that is the statement had a natural tendency to influence, or was capable of influencing, the FBI's decisions or activities.

(Doc. 78 at 22.)

The Court further instructed the jury that "the false statement does not have to actually influence the agency, and the agency does not need to rely on the information in fact for the statement to be material." (*Id*.) The Court instructed the jury that the Government needed to prove that St. Goddard understood the question in the manner alleged and answered falsely under that understanding, if the jury believed that the alleged false statement or representation arose from ambiguous or conversational questions. (*Id*. at 22-23.)

**STANDARD OF REVIEW**

### I.    Judgement of acquittal

Federal Rule of Criminal Procedure 29(c) allows a court to enter a judgment of acquittal after a jury verdict if the evidence proves insufficient to sustain the conviction. A court must view the evidence at trial in the light most favorable to the prosecution to determine whether any rational trier of act could have found that the prosecution proved the elements of the claim beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc).

### II.    New Trial

Federal Rule of Criminal Procedure 33 allows a court to grant a new trial "if the interest of justice so requires." A decision to grant a motion for a new trial rests within the sound discretion of the court. *United States v. Powell*, 932 F.2d 1337, 1340 (9th Cir. 1991). A motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984).

**DISCUSSION**

### I.    Judgment of acquittal

The Court instructed the jury on Count 4 alleging that St. Goddard made a false statement to an FBI agent and that the Government must prove each of the

4

elements beyond a reasonable doubt. St. Goddard argues that the Government failed to prove element one, that St. Goddard made a statement that was false, fictious, or fraudulent (Doc. 93 at 4.) St. Goddard contends that the Government failed to prove element three, that St. Goddard made the statement knowingly and willfully. (*Id.*) Lastly, St. Goddard asserts that the Government failed to prove element four, that the statement was material. (*Id.* at 4-5.) The Court will address each issue in turn.

### A. False, Fictious, or Fraudulent statement

St. Goddard contends that he relayed truthfully to SA Prete that he picked up Jane Doe at his residence, transported her, and dropped her at the St. Mary's lodge, "ending his involvement there." (*Id.*) St. Goddard argues that his response to SA Prete's questions were literally true and not untrue when made, precluding a conviction under § 1001. (Doc. 93 at 4.) St. Goddard relies on a limited portion of the interview conducted on September 10, 2024, to support his argument that his statements were not false, fictious, or fraudulent. (Doc. 93 at 2.) The Court disagrees.

St. Goddard relies on *United States v. Castro*, 704 F.3d 125 (3d. Cir. 2013), to support his proposition that the Government provided insufficient evidence to support his conviction under § 1001. *Castro* reasoned that answers that were literally true could not support a § 1001 conviction. *Id.* (citing *Bronston v. United*,

5

409 U.S. 352, 362 (1973)). *Castro* involved a defendant who made statements to FBI agents about not having received money from a bribery scheme in which he allegedly was involved. *Id*. at 139. *Castro* found that the defendant answered accurately that he had not received money from a particular person. *Id*. The defendant had received these funds from an alleged "debt" from the FBI through an FBI informant rather than from the alleged partner in the bribery scheme. *Id*. The truthfulness of the defendant's statement that he had not received payments from the alleged partner in the bribery scheme was literally true. *Id*. The truthfulness of the defendant's statement made it impossible for the government to prove the second element that the defendant's statement was false. *Id*. *Castro* reversed the defendant's conviction under § 1001 because his answer was literally true. *Id*. at 141.

St. Goddard's responses to SA Prete remain distinguishable from the facts of *Castro*. SA Prete questioned St. Goddard about his involvement with Jane Doe on the night of June 22, 2025. St. Goddard provided SA Prete with only limited information about the night. SA Prete asked St. Goddard general questions about his time with Jane Doe on the night in question. St. Goddard never truthfully stated that he had sexual contact with Jane Doe at any point in the interview. SA agent Prete asked St. Goddard "[s]o, you *just* picked her up, dropped her off at the lodge, and that was kind of the end of it." (Doc. 75-1 at 4:12-14.) (emphasis added). St.

Goddard responded, "[y]eah," falsely conveying that nothing else had occurred that night and leaving out the important detail that St. Goddard had sexual contact with Jane Doe on the night in question. (*Id*. at 4:15.) St. Goddard's answer was not literally true, as he did not just pick Jane Doe off and drop her off.

The Court previously concluded that SA Prete's questions were not fundamentally ambiguous and that a jury could convict St. Goddard under § 1001 when St. Goddard previously moved to dismiss the Indictment. (*See* Doc. 52.) The Court determined that whether St. Goddard provided a false answer to an allegedly ambiguous question from SA Prete remained a decision for the jury. (*Id*.) The Court concluded that the jury would be tasked with evaluating "[t]he context of the question and other extrinsic evidence relevant to the defendant's understanding of the question [to] allow the finder of fact to conclude that the defendant understood the question as the government did and, so understanding answered falsely." (Doc. 52 at 6 (citing *United States v. Camper*, 384 F. 3d 1073, 1076 (9th Cir. 2004) (citations omitted)).

The Ninth Circuit repeatedly has held that juries may "look to the context of the defendant's statement to determine whether the defendant and his questioner joined issue on a material fact to which the defendant knowingly uttered a false declaration." *United States v. Jiang*, 476 F.3d 1026, 1029 (9th Cir. 2007) (quoting *United States v. Sainz*, 772 F.2d 559, 562 (9th Cir.1985)). The Court remains

unpersuaded that St. Goddard's affirmative answers to SA Prete's questions were literally true when made. The answer provided to SA Prete by St. Goddard was false as he did not simply pick up and drop off Jane Doe on the night in question. The jury properly considered the context of SA Prete's questions and extrinsic evidence to find that St. Goddard understood the question as SA Prete did and answered falsely, even if framed slightly ambiguously. St. Goddard admittedly had sexual contact with Jane Doe on the night in question. St. Goddard did not relay this sexual contact information to SA Prete rendering his responses false when asked about his involvement in the alleged sexual assault of Jane Doe.

The Government proved that St. Goddard's representation that he "just" gave Jane Doe a ride on the night in question was not literally true, even in the presence of potentially ambiguous language like the word "kind of" interjected into the question. The Court instructed the jury in the following manner if the jury believed that the alleged false statement or representation arose from ambiguous or conversational questions: "the Government must prove that the defendant understood the question in the manner alleged and answered falsely under that understanding." (Doc. 78 at 22-23.) The jury resolved St. Goddard's concerns that SA Prete's questioning had been too ambiguous to support a § 1001 conviction.

The entire transcript further provided the context on which the jury relied in making the determination that St. Goddard falsely had provided a statement to SA

Prete. It was clear from the questioning that SA Prete sought to gather information on an alleged sexual assault reported by Jane Doe that occurred on the night that St. Goddard was with Jane Doe. SA Prete made it clear to St. Goddard at the beginning of the interview that he was investigating an alleged sexual assault of Jane Doe from June 2024. St. Goddard never admitted the fact that he had sexual contact with Jane Doe on June 22, 2024, when asked about the extent of his encounter with Jane Doe.

The Court declines to find that the Government failed to prove that St. Goddard made false statements to SA Prete when looking at the evidence most favorable to the Government and in analyzing the context of the questioning by SA Prete. St. Goddard falsely represented that he had told SA Prete his complete side of the story when asked what happened. SA Prete asked St. Goddard a question at the end of the interview of "[i]s there anything else you can tell me, or anything else I should know about?" (Doc. 75-1 at 7:10-12.) St. Goddard responded "[n]o." (*Id*. at 7:12.) St. Goddard falsely represented to SA Prete that there was nothing else about that night that happened, despite knowing that he had sexual contact with Jane Doe.

The Court previously explained that the jury could consider extrinsic evidence such as St. Goddard's age and sophistication "to determine at trial whether St. Goddard understood the questioning and the alleged falsity of his

9

answers." (Doc. 52 at 6.) The jury complied. The extrinsic evidence offered about St. Goddard's education and experience as a lawyer further supports the rational trier of fact's finding that St. Goddard's statements to SA Prete were false. St. Goddard reasonably knew what information SA Prete was attempting to divulge from St. Goddard considering St. Goddard's legal background and that he had been informed that SA Prete was investigating an alleged sexual assault involving Jane Doe. St. Goddard's false representations to SA Prete that nothing further happened with Jane Doe on the night in question were not truthful representations in the context of the entire interview. By failing to provide the full picture of the night in question when asked, and instead answering affirmatively that he "just" picked up and dropped off Jane Doe, a rational trier of fact could and did conclude that St. Goddard answered SA Prete's questions falsely.

## B. Knowingly and willfully

St. Goddard also argues that he did not knowingly and willfully make a false statement. (Doc. 93 at 4.) The Court disagrees. The Government may establish the intent to defraud through circumstantial evidence. *United States v. Milwitt*, 475 F.3d 1150, 1162 (9th Cir. 2007).

The Court instructed the jury that willfully and knowingly meant that St. Goddard answered the questions from SA Prete "deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful" (Doc. 78 at

10

22.) The transcript of the FBI interview conducted with St. Goddard and provided to the jury indicates that SA Prete disclosed to St. Goddard that he was investigating allegations of sexual assault made by Jane Doe. St. Goddard responded "what's 'involved' mean." (Exhibit 39.) St. Goddard further testified at trial that he felt that SA Prete's questions were "accusatory," that he "shut it down," and that he "didn't want to implicate himself." (Doc. 103 at 43:4-5, 46:11 and 73:13).

St. Goddard's interview answers and testimony at trial could allow a rational juror to conclude that St. Goddard deliberately and knowingly had wanted to provide SA Prete with false and misleading answers in the interview. St. Goddard knew he needed to provide SA Prete with all the information about his involvement with Jane Doe on the night in June of 2024. St. Goddard testified that he chose to omit relevant information from his answers to SA Prete's questions about that night to avoid implicating himself in the alleged crime.

SA Prete's questions asked St. Goddard to describe the entirety of what occurred between him and Jane Doe on the night of the alleged sexual assault. SA Prete asked if St. Goddard "just" picked up and dropped off Jane Doe. St. Goddard deliberately replied yes to this question, knowing that more occurred that night. St. Goddard knew what SA Prete was investigating and that SA Prete likely would want to know about any sexual encounters St. Goddard had with Jane Doe on that

night, especially given his legal background. St. Goddard deliberately chose to falsely respond to SA Prete's questions and falsely withhold such pertinent information from SA Prete during the interview.

A reasonable juror could find St. Goddard's responses and testimony show that he willfully and knowingly withheld information about his sexual contact with Jane Doe on the night that the alleged sexual assault on Jane Doe occurred. St. Goddard understood what information SA Prete sought. St. Goddard nevertheless unlawfully chose not to disclose his sexual contact with Jane Doe when asked if he "just" picked her up and dropped her off. The Government provided sufficient evidence that St. Goddard knew that stating he just picked up and dropped off Jane Doe was untrue and that his conduct was unlawful.

### C. Materiality

Lastly, St. Goddard argues that the evidence at trial proved insufficient to show the false statement was "material." (Doc. 93 at 4-5.) St. Goddard contends that no evidence showed that St. Goddard's statement altered investigative steps. (Doc. 93 at 5.) The Court disagrees.

The Court instructed the jury that materiality was defined as having a "natural tendency to influence or was capable of influencing the FBI's decisions and activities." (Doc. 78 at 22.) The jury instructions also noted that "the false

statement does not have to actually influence the agency, and the agency does not need to rely on the information in fact for the statement to be material." (*Id*.)

The evidence presented at trial established that St. Goddard's false statements were material. The Government was not required to prove that St. Goddard's statements that he dropped off Jane Doe without disclosing that sexual contact occurred with Jane Doe, actually altered or influenced the FBI's investigation. The Government needed to establish only that the information that St. Goddard had sexual contact with the alleged victim of a sexual assault on the night in question would be the type of information on which the FBI typically relies in sexual assault investigations. The Government established that.

SA Prete testified that knowing whether a person engaged in sex with an alleged sexual assault victim would be relevant and important information as to the next investigative steps. (Doc. 100 at 39:4-8.) SA Prete explained to the jury that information relating to sexual encounters with the complaining sexual assault victim may direct the investigation and inform the FBI what direction to go moving forward. (*Id*. at 39:9-11.) Weighing the evidence most favorably to the Government, a reasonable trier of fact could conclude that St. Goddard's false statement was material to the FBI's investigation of Jane Doe's alleged sexual assault.

The evidence presented at trial proved sufficient to sustain a conviction against St. Goddard on Count 4 of the Indictment which charged St. Goddard with making a false statement in violation of 18 U.S.C. § 1001(a)(2). A rational juror could find that the Government satisfied each of the elements of the false statement claim beyond a reasonable doubt, based on the recorded interview between SA Prete and St. Goddard and the transcript provided of the conversation. The Court denies St. Goddard's motion for judgment of acquittal.

## II.    New trial

St. Goddard argues that the guilty verdict on Count 4 is against the clear weight of the evidence to warrant a new trial. (Doc. 93 at 9.) The Court disagrees. A motion for a new trial may only be granted "in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984).

The Government provided sufficient evidence, including the recording of the FBI interview with St. Goddard, the interview transcript, SA Prete's testimony, and St. Goddard's testimony to support a § 1001(a)(2) false statement conviction against St. Goddard. The clear weight of the evidence presented by the Government at trial supports a conviction against St. Goddard. The Court exercises its discretion to deny St. Goddard's renewed motion for judgment of acquittal and motion for a new trial.

14

**ORDER**

Accordingly, **IT IS ORDERED** that St. Goddard's Motion for Judgment of

Acquittal, or a New Trial (Doc. 93) is **DENIED**.

Dated this 11th day of March 2026.

_____
Brian Morris, Chief District Judge
United States District Court